LUBAVITCH OF IOWA, INC. and
Moishe B. Kasowitz, Plaintiffs,

v.

Jack B. WALTERS, Director of General Services of the State of Iowa and the State of Iowa, Defendants.

Civ. No. 86–901–B.

United States District Court,
S.D. Iowa, C.D.

March 24, 1988.

---

Paul A. Zoss, Burns Davison, II, Des Moines, Iowa, for plaintiffs.

Thomas J. Miller, Atty. Gen., Earl M. Willits, Deputy Atty. Gen., Gordon Allen, Sp. Asst. Atty. Gen., Merle Wilna Fleming, Anne Marie Brick, Asst. Attys. Gen., Des Moines, Iowa, for defendants.

David H. Goldman, Des Moines, Iowa, and Marc Stern, Lois C. Waldman, American Jewish Congress, New York City, for amici curiae Tifereth Israel Synogogue, Congregation B'Nai Jeshurun, Union of American Hebrew Congregation, American Jewish Congress, Cent. Conf. of American Rabbis, and Jewish Federation of Greater Des Moines.

Mark W. Bennett, Staff Counsel, Iowa Civil Liberties Union, Des Moines, Iowa, amicus curiae for defendants.

## MEMORANDUM OPINION, RULINGS AND ORDER OF DISMISSAL

VIETOR, Chief Judge.

Plaintiffs' motion for summary judgment and defendants' cross-motion for summary judgment are before the court for rulings.

The issue in this case is whether plaintiffs have a right under the First Amendment to the Constitution of the United States, which applies to the states through the Fourteenth Amendment, to erect a twenty foot high menorah and leave it standing for a number of days (the duration of Hanukkah) on a landing adjacent to the west steps and entrance to the defendant state's capitol building in Des Moines. Defendants originally granted plaintiffs permission to erect the menorah and leave it standing through Hanukkah, but then revoked the permission. Plaintiffs then commenced this action in which they seek declaratory and mandatory injunctive relief.

Fed.R.Civ.P. 56(c) provides that summary judgment shall be granted if the summary judgment record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In this case, there is no genuine issue as to any material fact.[1]

## MATERIAL FACTS

(1) Plaintiff Moishe B. Kasowitz is an ordained rabbi and the State Director of plaintiff Lubavitch of Iowa, Inc. (Lubavitch).

(2) Lubavitch is a branch of the international Lubavitch movement, an organization primarily dedicated to educating and uplifting Jewish pride throughout the world.

(3) On December 10, 1986, Rabbi Kasowitz contacted defendant Jack B. Walters, director of General Services for the defendant State of Iowa, and requested permission to erect a twenty foot tall menorah on the landing adjacent to the west steps and entrance to the Capitol during the Jewish holiday of Hanukkah, from late December 1986 through early January 1987.

(4) A menorah is a nine-branch candelabra used in the celebration of Hanukkah.

---

1. The material facts recited below, unless otherwise noted, are drawn from the statements of undisputed facts filed by the parties pursuant to Local Rule 2.2.7. Some of the parties' statements of "undisputed facts" are not recited because they are not really material or are in the nature of argumentative conclusions rather than evidentiary facts.

(5) Religious services at the site were planned for:

December 26, 1986, 4:00—4:30 p.m.
December 27, 1986, 6:30—7:30 p.m.
December 28, 1986, 4:30—5:30 p.m.
December 29, 1986, 4:30—6:00 p.m.
December 30, 1986, 4:30—5:30 p.m.
December 31, 1986, 4:30—5:30 p.m.
January 1, 1987,   4:30—5:30 p.m.
January 2, 1987,   4:00—4:30 p.m.

Further, a grand inaugural celebration with state-wide publicity was planned for Monday, December 29, 1986.

(6) On December 10, 1986, Walters agreed to the erection and display of the menorah, and issued a letter permitting the installation of the menorah on the grounds of the state Capitol between December 26, 1986, and January 2, 1987.

(7) A week later, on December 17, 1986, Walters issued a letter to Rabbi Kasowitz rescinding permission to erect the menorah for the duration of Hanukkah, stating in part the following:

I have reviewed this matter with the Iowa Attorney General's office. They have advised me that placement of unattended religious symbols on the State House grounds may violate the Establishment Clause of the First Amendment of the Bill of Rights of our Constitution. Thus, to avoid litigation, the Attorney General's office has advised that we will not allow the installation of the menorah on State House Grounds.

The Capitol grounds are available on a first come, first served, permission basis for many groups, religious and otherwise, to hold rallies, services, protests and meetings, subject to certain uniform restrictions and regulations. This is done on a equal access basis for all groups. Thus, you are welcome to have your services at the time set forth in your letter of December 10, 1986. Of course, during these services, you may light and use Menorahs during the time specified. In addition, you are welcome to use the Capitol Building cafeteria area to serve refreshments as outlined in my letter of December 10th.

(8) On December 19, 1986, the plaintiffs filed their complaint in this case praying for a temporary restraining order, a temporary injunction and a permanent injunction prohibiting defendants from rescinding the permission they had granted for the erection of the menorah, alleging that the rescission was in violation of the plaintiffs' rights under the First and Fourteenth Amendments of the United States Constitution.

(9) A temporary restraining order hearing, which by agreement of counsel became a preliminary injunction hearing, was held before me on December 19 and 22, 1986. At the hearing, Jack Walters testified that the area where the menorah was to be displayed was traditionally used as a forum for free speech:

Q. Mr. Walters, is that an area traditionally used in the State of Iowa for people in Iowa to exercise their free speech?
A. Yes, it is.
Q. In fact, that's sort of a designated area where people demonstrate and have meetings and other kinds of demonstrations of free speech?
A. That's true. (Tr. pp. 58–59).

Walters also testified that, other than the "Establishment Clause objection," there was no objection by the State to the display proposed by Rabbi Kasowitz (Tr. pp. 62–63).

(10) Iowa Administrative Code r. 450–1.-6(4) (1987) requires "Any State agency or public group granted permission to use the capitol complex facilities shall be responsible for thorough clean-up after the event is concluded. All debris and animal waste shall be removed." (Exhibit A introduced at preliminary injunction hearing.)

(11) I denied the plaintiffs' request for a preliminary injunction by oral ruling dictated into the record on December 22. A hasty appeal followed and on December 24 a panel of the United States Court of Appeals for the Eighth Circuit affirmed, 2–1, finding no abuse of discretion in my denial of the motion for preliminary injunction. *Lubavitch of Iowa, Inc. v. Walters*, 808 F.2d 656 (8th Cir.1986). It was then agreed

between plaintiffs and defendants that the menorah could be erected on the proposed location west of the Capitol and used in whatever religious service plaintiffs desired with removal immediately thereafter. Utilizing a flat-bed truck, plaintiffs erected the menorah and conducted a service on December 28, 1986, in which nearly 100 people participated. They then removed the menorah and transported it to private land at Drake University in Des Moines. The photograph attached hereto as Appendix "A" shows the menorah before the Capitol on December 28.[2]

(12) Throughout the 1986 Christmas season, with which Hanukkah partially coincided, a state-owned Christmas tree was on display in the rotunda of the Capitol. The tree was decorated with angels[3] and other Christmas ornaments. Another state-owned Christmas tree was on display on the grounds outside of the Capitol, and Christmas decorations were displayed throughout state office buildings.

(13) If the defendants had permitted the menorah to stand throughout Hanukkah, plaintiffs would have provided a security guard to attend it at all times.

## DISCUSSION AND CONCLUSIONS

The essence of plaintiffs' position is that by refusing to permit them to leave the menorah outside the Capitol throughout Hanukkah, during which they would have daily half-hour to hour-and-a-half services at the site, defendants denied them their right of free expression under the First Amendment. Defendants contend (1) that limiting display of the menorah to the times of actual services was a reasonable time, place and manner restriction on use of the public forum and hence not a violation of plaintiffs' free expression rights under the First Amendment, and (2) that

permitting the menorah to remain on constant display throughout Hanukkah would violate the establishment clause of the First Amendment.

I agree with defendants that their restriction was a reasonable time, place and manner restriction. Defendants have permitted the site in question to become a public forum, and such public forum status is recognized in Iowa Administrative Code r. 450–1.6(3), which provides:

State agencies or the general public may request use of capitol complex grounds or parking lots for public events by letter to the director stating the name of the group, the purpose, the date, the number of participants and the name, address and telephone number of the responsible person and contact person. This shall not be interpreted as an infringement on the right of assembly and petition guaranteed by Section 20, Article I, The Constitution of Iowa.

Plaintiffs were permitted to erect the menorah in conjunction with each of the several daily services they planned. Requiring them to remove it at the end of each service was consistent with—indeed, required by—the provision in Iowa Administrative Code r. 450–1.6(4) that there be "a thorough cleanup after the event is concluded." Nothing in the summary judgment record suggests that any person or group has ever been permitted to leave a symbolic item, sign, banner or any other object free-standing on the public forum site after the event or between events scheduled on successive days. Therefore, under 450–1.6(4) and the record, it appears clear that the state's policy is content neutral.

Plaintiffs' contention that the series of daily services would be just one "event" that did not conclude until the last scheduled one ended is specious. Hanukkah

---

**2.** I take judicial notice of the following: Locust Street is a straight, one-way street with traffic moving from west to east through downtown Des Moines (on the west side of the Des Moines River) and the east side business district (on the east side of the river) up to the base of the hill on which the Capitol is located. Anybody travelling on Locust has a clear view of the west side of the Capitol from several blocks west of the river, and the twenty foot tall menorah on

the landing adjacent to the west steps and entrance to the Capitol would be visible for at least several blocks from the base of the hill.

**3.** In the 1987 Christmas season, a Christmas tree was again erected in the rotunda and decorated, but not with angels. (Statement of counsel at oral argument on December 29, 1987.)

may be considered to be a single event that lasts several days, but what was scheduled outside the Capitol was not Hanukkah but eight separate religious services—eight separate events.

Expression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions. We have often noted that restrictions of this kind are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information. [Citations omitted.]

*Clark v. Community For Creative Non-Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3068–69, 82 L.Ed.2d 221 (1984).

"[T]he First Amendment does not guarantee access to government property simply because it is owned or controlled by the government." *United States Postal Service v. Greenburgh Civic Assns.,* 453 U.S. 114, 129, 101 S.Ct. 2676, 2685, 69 L.Ed.2d 517 (1981). The "existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry Education Assn. v. Perry Local Educators' Assn.,* 460 U.S. 37, 44, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983).

[T]he mere fact that government property can be used as a vehicle for communication does not mean that the Constitution requires such uses to be permitted. Cf. *United States Postal Service v. Greenburgh Civic Assns.,* 453 U.S., at 131 [101 S.Ct. at 2685–86].[31]

circumstances, the State, "no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Adderley v. Florida,* 385 U.S. 39, 47, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966).

*City Council v. Taxpayers for Vincent,* 466 U.S. 789, 814, 104 S.Ct. 2118, 2133–34, 80 L.Ed.2d 772 (1984).

Surely the state has a significant and legitimate interest in controlling the grounds at its own seat of government, the Capitol. Aesthetic interests are legitimate interests, *id.* at 805, 104 S.Ct. at 2128–29, and the state has a police power right to keep the grounds free from signs and symbolic objects communicating messages of their sponsors, be those messages religious, political, social, moral, commercial or of any other nature. And the state does not forfeit that right merely because it allows persons to conduct First Amendment events on the Capitol grounds and use signs and symbolic objects in conjunction with those events. There are ample opportunities for plaintiffs to publicly display the menorah during Hanukkah; they were allowed to display it during their services on the Capitol grounds, they were offered the opportunity to locate it for the duration of Hanukkah on the grounds of Terrace Hill (the Governor's mansion), and private land locations were also available, including Drake University, where it was erected. The state's restriction is a reasonable time, place and manner restriction.

The foregoing being dispositive of the case, I need not, and do not, decide whether there would be a First Amendment establishment clause violation if the defendants had permitted the menorah to remain standing for the duration of Hanukkah.[4]

Two factors in this case deserve brief additional comment. The first factor is that defendants first granted the permission sought, then revoked it expressing only establishment clause concerns, and did not advance the reasonable time, place and manner restriction until this litigation was commenced a couple days later. The sec-

---

31 Any tangible property owned by the government could be used to communicate—bumper stickers may be placed on official automobiles—and yet appellees could not seriously claim the right to attach "Taxpayer for Vincent" bumper stickers to city-owned automobiles. At some point, the government's relationship to things under its dominion and control is virtually identical to a private owner's property interest in the same kinds of things, and in such

---

4. The establishment clause concern is a substantial one, as is disclosed by a reading of a case very recently decided, *American Civil Liberties*

*Union v. County of Allegheny,* 842 F.2d 655 (3d Cir.1988), and the numerous cases cited and reviewed therein.

ond factor is the presence in the Capitol rotunda and on the Capitol grounds of two Christmas trees.

I do not find the first factor troubling. Defendant Walters' initial permission cannot be construed as an irrevocable waiver of the state's restriction. Nor was the reliance on only the establishment clause concern in the notice revoking permission a waiver of the state's restriction.

The second factor is somewhat troubling, and it certainly troubled Circuit Judge Arnold, who dissented from the affirmance of my denial of preliminary injunctive relief. I think his brief dissent is worthy of being fully repeated here:

A Christmas tree owned by the State of Iowa has been erected in the rotunda of the state capitol. Another Christmas tree, also owned by the state, has been erected on the capitol grounds. The ornaments on the tree in the rotunda of the state capitol include angels. The state is obligated to treat all religions evenhandedly. Allowing the placement of these Christmas trees, while at the same time denying permission for the Menorah, appears to be a discrimination against the Jewish religion. So long as Christian symbols are permitted, other religions should be given equal treatment.

I would therefore grant the relief sought by plaintiffs-appellants, leaving, however, to the state the option of removing any unattended Christmas trees from the state capitol and its grounds, in which event the state would be free not to allow an unattended Menorah on the capitol grounds.

*Lubavitch of Iowa, Inc. v. Walters, supra,* 808 F.2d at 657 (Arnold, J., dissenting).

Judge Arnold is not the only one who appears to believe that Christian symbolism is communicated by a government display of a Christmas tree. See page 13 of Brief Amici Curiae of Tifereth Israel Synogogue, et al., and plaintiffs' Memorandum in Support of Motion for Summary Judgment, page 16.[5] However, Judge Arnold's concern was not shared by the other two members of the Eighth Circuit panel and does not appear to be shared by the Supreme Court, which listed the Christmas tree among numerous secular symbols of the Christmas season in *Lynch v. Donnelly*, 465 U.S. 668, 671, 104 S.Ct. 1355, 1358, 79 L.Ed.2d 604 (1984). The Seventh Circuit views the Christmas tree as "no longer associated with [Christianity] in popular understanding." *American Civil Liberties Union v. City of St. Charles*, 794 F.2d 265, 271 (7th Cir.1986). In view of this authority, I must conclude that the state's display of Christmas trees does not constitutionally require that the state permit display of the menorah.

Plaintiffs' motion for summary judgment is DENIED. Defendants' motion for summary judgment is GRANTED, and IT IS ORDERED that plaintiffs' complaint be dismissed.

**5.** Amici curiae briefs were filed by the Iowa Civil Liberties Union and Tifereth Israel Synogogue, Congregation B'Nai Jeshuran, Jewish Federation of Greater Des Moines, Union of American Hebrew Congregations, Central Conference of American Rabbis, and American Jewish Congress. In both briefs the court is urged to grant the defendants' motion for summary judgment and deny the plaintiffs' motion for summary judgment on the ground that a constant display of the menorah on the Capitol grounds throughout Hanukkah would violate the establishment clause of the First Amendment. The brief of Tifereth Israel Synogogue, et al. also relies on the reasonableness of the time, place and manner restriction, a view not shared by the Iowa Civil Liberties Union, which expressed the opinion that the summary judgment record was insufficient to resolve the case on that ground. I appreciate the able legal briefing of amici curiae.