THE KNIGHT RIDERS OF the KU KLUX KLAN, et al., Plaintiffs,

v.

The CITY OF CINCINNATI, Defendant.

No. C–1–93–0870.

United States District Court, S.D. Ohio, W.D.

Dec. 17, 1993.

Scott Greenwood, Cincinnati, OH, for plaintiffs.

Richard Ganulin, Cincinnati, OH, for defendant.

*FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW*

CARL B. RUBIN, District Judge.

This matter is before the Court upon a Motion for Preliminary Injunction filed by Plaintiffs, and upon a hearing held thereon on December 16, 1993. Plaintiffs seek a permit to erect "a standing Christian cross" on Fountain Square in Cincinnati, Ohio, for ten (10) days, beginning on December 19, 1993. In accordance with Fed.R.Civ.P. 52, the Court hereby submits its Findings of Fact, Opinion and Conclusions of Law.

I.

*FINDINGS OF FACT*

1. Plaintiffs are The Knight Riders of the Ku Klux Klan (KKK), an unincorporated organization. Other than adopting the name "Ku Klux Klan," Plaintiffs have no apparent connection with any other organization bearing that name.

2. The use of Fountain Square in the City of Cincinnati has been the subject of frequent controversy. The City of Cincinnati has attempted twice to ban a display of a Menorah, *see Congregation Lubavitch v. City of Cincinnati*, 923 F.2d 458 (6th Cir.1991); *Congregation Lubavitch v. City of Cincinnati*, 807 F.Supp. 1353 (S.D.Ohio 1992); *aff'd*, 997 F.2d 1160 (6th Cir.1993). These decisions have denied the City of Cincinnati the right selectively to control who may and who may not use the public property on Fountain Square.

3. In 1993, the City Council of the City of Cincinnati apparently abandoned its effort to prevent the erection of a Menorah on Fountain Square, but passed Ordinance No. 354–1993, which provides as follows, in pertinent part:

> Section 1: The Council hereby finds and determines that it is necessary to prohibit the communication on Fountain Square of obscenity, defamation and "fighting words" in order to provide for the public peace, welfare and safety.

Section 5 of the Ordinance begins:

> That new Section 713–2 of the Cincinnati Municipal Code is hereby ordained to read as follows:

Section 713–2. *Prohibitions on Fountain Square* ...

(b) No person may communicate on Fountain square any obscenity, defamation or "fighting words," including but not limited to a symbol, object, appellation, characterization, oral communication or graffiti, which injures a person or group of persons or is likely to cause an immediate act of violence by the listener or observer....

4. On November 17, 1993, Plaintiffs filed an application for a permit to use Fountain Square for ten (10) days, beginning on December 19, 1993. The permit application listed the intended display as "a standing Christian cross." On December 2, 1993, Cincinnati Director of Public Works John Hamner denied Plaintiffs' application. On December 8, 1993, the City Manager's office held a hearing on Plaintiffs' appeal, and on December 10, 1993, the City Manager announced that he was upholding the Public Works Director's decision to deny Plaintiffs a permit to use Fountain Square.

5. The proposed cross would bear upon it the language "John 3:16." That portion of the New Testament contains the following, in its entirety:

[F]or God so loved the world that he gave his only Son so that anyone who believes in Him shall not perish, but have everlasting life.

## II.

### OPINION

The Court will resist the temptation to use the judicial cliche, "We do not write upon a blank slate." Let it suffice to say that this represents at least the third time that the United States District Court has been called upon to determine who may and who may not use Fountain Square. As a matter of background, the Court notes that Fountain Square is an area in downtown Cincinnati bounded by Vine Street on the west, Fifth Street on the south, Walnut Street on the east and a structure known as the Fifth Third Center on the north. It is approximately one-half block in size and contains the Tyler–Davidson Fountain, from which the Square's name originated. Fountain Square is in fact the center of downtown Cincinnati and the site of various forms of entertainment, political meetings, Christmas decorations and other forms of public use. It is approximately six blocks distant from and invisible to the Cincinnati City Hall located on Ninth and Plum Streets. By reason of intervening buildings, it is essentially invisible to the United States Courthouse located on the northeast corner of Fifth and Walnut streets. No other public building exists in proximity to Fountain Square.

Ordinance 345–1993 is only the latest in a series of efforts by the City of Cincinnati to limit the use of Fountain Square in accordance with the opinions of City Council. Those efforts have been uniformly unsuccessful and expensive to the citizens, who must pay not only for the time and efforts expended by the Solicitor's Office of the City of Cincinnati, but also for the attorney fees awarded to those who have successfully resisted the City's efforts to restrict access to Fountain Square.

We should note at the outset what the Court is deciding and what it has not. The constitutionality of Ordinance No. 345–1993 is not addressed herein, nor are the questions of whether the City may limit the timespan of the application nor the location of the cross itself. These matters properly may be considered at the hearing of this matter on its merits. The Court specifically declines the opportunity to apply Fed. R.Civ.P. 65(a)(2) to combine the preliminary injunction hearing with a hearing on the merits. A hearing on the merits of this matter will be held as soon as the parties have completed discovery. The sole issue that the Court now is ruling is whether or not this particular application for this specific display may be constitutionally denied under Ordinance No. 345–1993.

Like cases involving other uses of Fountain Square, this case turns upon a consideration of the First Amendment to the Constitution of the United States. The First Amendment is stated in absolute terms: "Congress shall make no law abridging the freedom of speech...." During the two centuries that the First Amendment has existed,

however, narrow exceptions have been created. The first of these, the "clear and present danger" doctrine, was articulated by Justice Holmes in *Schenck v. United States*, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919). The Supreme Court later rejected the clear and present danger concept as related to the Ku Klux Klan, however, in *Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (per curiam) (Douglas, J., concurring).

Another line of cases likewise holds that "obscenity" is not protected by the First Amendment. This doctrine is not relevant to the issues now before the Court. The Court notes in passing that the Supreme Court of the United States has experienced substantial difficulty in defining "obscenity."

 The exception recognized in the third line of cases, and the one upon which the City of Cincinnati now relies, is that of "fighting words." In *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), the Court considered that category of expression to be unprotected by the First Amendment. The "fighting words" exception is a very narrow one, and must be applied with great care.

Defendant seeks support for its position under a recent case entitled *R.A.V. v. City of St. Paul*, 505 U.S. ——, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). Defendant's reliance thereon may to be misplaced. In that case, a cross was burned on private property. This Court recognizes a substantial and controlling distinction between a burning cross on private property and a standing cross on public property.

Defendant's reliance on *Wisconsin v. Mitchell*, —— U.S. ——, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993) likewise is misplaced. The facts in that case differ almost diametrically from the fact situation with which this Court is presented. In the *Wisconsin* case, a black defendant was convicted of aggravated battery because he intentionally selected his victim on account of the victim's race. The following comments from the majority opinion are applicable to the matter at hand:

> To be sure, our cases reject the "view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968); (citations omitted). Thus, a physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment. *See Roberts v. United States Jaycees*, 468 U.S. 609, 628, 104 S.Ct. 3244, 3255, 82 L.Ed.2d 462 (1984) ("[V]iolence or other types of potentially expressive activities that produce special harms distinct from their communicative impact ... are entitled to no constitutional protection"); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916, 102 S.Ct. 3409, 3427, 73 L.Ed.2d 1215 (1982) ("The First Amendment does not protect violence").

*Wisconsin v. Mitchell*, —— U.S. at ——, 113 S.Ct. at 2198 (Rehnquist, C.J.).

In considering any limitation upon the First Amendment, the Court is bound by a concept set forth in *Boos v. Barry*, 485 U.S. 312, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988):

> Our cases indicate that as a *content-based* restriction on *political speech* in a *public forum*, [the ordinance at issue] must be subjected to the most exacting scrutiny. Thus, we have required the state to show that the "regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end."

*Id.* at 321, 108 S.Ct. at 1163 (emphasis in original) (citing *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983)). The Court in *Boos* also made the following further observation:

> [I]n public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide "adequate 'breathing space' to the freedoms protected by the First Amendment."

*Id.* 485 U.S. at 322, 108 S.Ct. at 1164 (citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56, 108 S.Ct. 876, 882, 99 L.Ed.2d 41 (1988)).

 In view of the foregoing, it is clear that a balancing test is required in any situation such as that presented to the Court. On the one hand is the historical reliance upon

the First Amendment and its right of free speech. On the other is the narrow limitation that the Supreme Court has termed a "small class of fighting words." *Texas v. Johnson,* 491 U.S. 397, 409, 109 S.Ct. 2533, 2541, 105 L.Ed.2d 342 (1989). The Court can find no language more pertinent in resolving that conflict than the following:

> If there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.

*United States v. Eichman,* 496 U.S. 310, 319, 110 S.Ct. 2404, 2410, 110 L.Ed.2d 287 (1990) (Brennan, J.) (quoting *Johnson,* 491 U.S. at 414, 109 S.Ct. at 2544).

Confronted with a silent cross bearing only a reference to a Bible verse that is not provocative, the Court must conclude that such symbol does not constitute fighting words, nor, in the words of *Chaplinsky, supra,* is any reasonable onlooker likely to regard that cross as a direct personal insult or an invitation to exchange fisticuffs. To build upon the narrow exceptions to the First Amendment in this context is to invite the danger that Justice Frankfurther foresaw when he observed that, "[b]ecause of the momentum of decision whereby doctrine expands case to case, such a claim carries dangerous implications." *Knapp v. Schweitzer,* 357 U.S. 371, 374, 78 S.Ct. 1302, 1304, 2 L.Ed.2d 1393 (1957), *overruled by Murphy v. Waterfront Com. of New York Harbor,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). A preliminary injunction hereby is GRANTED pending hearing of this matter on its merits.

### III.

#### CONCLUSIONS OF LAW

A. This Court has jurisdiction pursuant to 42 U.S.C. Section 1983.

B. The erection of a cross bearing only the words "John 3:16" does not constitute fighting words, and its erection may not be prohibited in a public place on that basis.

C. Whether or not the enabling ordinance is constitutional and whether or not the City of Cincinnati may limit the location and amount of time that such cross may remain in a public place is not now before the Court and will be reserved for a hearing on the merits.

D. In view of the foregoing, a preliminary injunction directing the City of Cincinnati to issue a permit providing for the erection of such a cross in accordance with that application hereby is GRANTED, with costs to be paid by Defendant.

LET JUDGMENT ISSUE IN ACCORDANCE WITH THE FOREGOING.