*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0098P (6th Cir.)
File Name: 04a0098p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CHABAD OF SOUTHERN OHIO
& CONGREGATION
LUBAVITCH; PETER RITCHEY,
 *Plaintiffs-Appellees,*

v.

CITY OF CINCINNATI,
 *Defendant-Appellant.*

No. 02-4340

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
Nos. 02-00840; 02-00880—Susan J. Dlott, District Judge.

Argued: October 31, 2003

Decided and Filed: April 5, 2004

Before: BATCHELDER and COLE, Circuit Judges;
HOOD, District Judge.[*]

_____

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

_____

## COUNSEL

**ARGUED:** Richard Ganulin, ASSISTANT CITY SOLICITOR, Cincinnati, Ohio, for Appellant. Marc D. Mezibov, SIRKIN, PINALES, MEZIBOV & SCHWARTZ, Cincinnati, Ohio, for Appellees. **ON BRIEF:** Richard Ganulin, ASSISTANT CITY SOLICITOR, Cincinnati, Ohio, for Appellant. Marc D. Mezibov, Jarrod M. Mohler, SIRKIN, PINALES, MEZIBOV & SCHWARTZ, Cincinnati, Ohio, for Appellees.

_____

## OPINION

_____

HOOD, District Judge. Plaintiffs-Appellees Chabad of Southern Ohio and Congregation Lubavitch (hereinafter, "Chabad") seek to erect a large menorah display on the main public square in Cincinnati, Ohio, and argue that a city ordinance prohibiting any non-government permit-based use of the square during the holiday season violates their First Amendment right to free speech. Upon the plaintiffs' motion, the district court below found that they had demonstrated a likelihood of success on the merits of their First Amendment claim and granted a preliminary injunction forbidding Defendant-Appellant to enforce the ordinance.

The City of Cincinnati appeals from the district court decision, arguing that the district court abused its discretion in granting Plaintiffs-Appellees' motion for preliminary injunction and enjoining Defendant-Appellant from enforcing a city ordinance. For the reasons that follow, we affirm the decision of the district court.

## I. FACTUAL AND PROCEDURAL HISTORY

On November 1, 2001, Rabbi Sholom B. Kalmanson applied for a permit allowing Chabad to erect a Chanukah Menorah on Fountain Square in Cincinnati, Ohio (hereinafter, the "City"), during the 2001 Chanukah celebration. He simultaneously filed an application for the 2002 season. Rabbi Kalmanson stated that he submitted such an early application for the 2002 celebration because Daryl Brock, the City's Director of Public Service had advised him that the City was granting permits on a "first come, first served" basis in an effort to curb the Ku Klux Klan's ability to erect a cross on Fountain Square and that it would be in Chabad's best interest to apply as early as possible.

Chabad erected a Menorah in 2001, the eleventh consecutive year that it had done so. Downtown Cincinnati Incorporated also constructed a large display in the Square during the 2001 holiday season. In late June or early July 2002, Rabbi Kalmanson learned that Chabad's application for a permit to erect the Menorah during the 2002 Chanukah celebration was denied based on the enactment of Ordinance No. 0122-2002, amending Cincinnati Municipal Code ("CMC") sections 713-1 through 713-9 and 713-99 and with an effective date of May 16, 2002. The newly amended CMC § 713-1 stated that the City "shall exercise its right to exclusive use" of Fountain Square "during the last two weeks of November, the month of December, and the first week in January...," a period including the 2002 Chanukah celebration and the proposed display of the menorah. CMC § 713-1. It continues:

> The City has an inherent right to control its property, which includes a right to close a previously open forum. During times of exclusive use by the City of Cincinnati, the City will bear the ultimate responsibility for the content of the display or event. No other party, other than the City of Cincinnati, may make decisions with regard to any aspect of the event and/or display. No

> private participation with regard to any aspect of the event and/or display will be permitted at this time. However, the City may accept donations or funds from other entities for the event and/or display which is the subject of exclusive use. As a result of its sole responsibility, ownership, management and control by the City of Cincinnati during times of exclusive use, it is recognized the City is engaging in government speech.

*Id*.

The stated purpose for amended § 713 was identified in Ordinance No. 0122-2002 as follows:

> With exclusive control over its content and design, the City will be able to ensure that the winter holiday display is safe, well-coordinated, inviting, and appeals to the widest of audiences for purposes of supporting and permitting the City's specific government interests....

Ordinance No. 0122-2002. These interests are listed, as follows:

(1) to better coordinate competing uses of Fountain Square;

(2) to ensure equal access to Fountain Square;

(3) to promote and develop tourism and recreation;

(4) to encourage, promote, simulate, and assist in the development of the Cincinnati business economy;

(5) to maintain, develop, and increase employment opportunities for those who live, work, and may consider moving to Cincinnati, and the Cincinnati region; and

(6) to pursue efforts to promote the expansion of the population residing within Cincinnati and to

specifically encourage, stimulate, and develop an expanding downtown resident population.

CMC § 713-1.

Following the denial of the permit application, Kalmanson stated that he attempted to negotiate the permit matter over many months but that his calls to various city officials, including the mayor, were never returned or that he was otherwise rebuffed. Plaintiffs-Appellees filed their verified complaint against the City on November 12, 2002. On November 13, 2002, Chabad moved for a temporary restraining order and preliminary injunction. After a November 25, 2002, hearing, the district court granted Plaintiffs-Appellees motion for preliminary injunction on November 27, 2002 and consolidated the matter with that captioned *Ritchey v. City of Cincinnati*, Case No. C-1-02-880.[1] The Sixth Circuit Court of Appeals entered a stay of the order enjoining enforcement. Justice Stevens, writing as Circuit Justice, subsequently vacated that stay on November 29, 2002.

---

[1] Plaintiff-Appellee Peter Edward Ritchey has made a tradition of dressing as Santa Claus and distributing leaflets on Fountain Square during the holiday season. Consolidation of his case with the *Chabad* case was conditionally permitted by the district judge at the beginning of the hearing on the motion for preliminary injunction, allowing for a response by the defendant. In its brief, Defendant-Appellant has questioned Ritchey's standing to challenge the ordinance. We, however, note that in a facial challenge such as this where one party has standing, we need not consider the issue of the standing of other parties to the action. *See, e.g., Bowsher v. Synar*, 478 U.S. 714, 721 (1986). Further, we note that the district court granted Chabad's motion for preliminary injunction and that order, in which no relief is directed specifically at Ritchey, is appealed. As deciding the issue of Ritchey's standing would require us to examine issues this appeal does not otherwise require us to decide (i.e. whether Ritchey's conduct is covered by the regulation; whether the narrowing construction is binding), we shall not address it here.

## II. STANDARD OF REVIEW

"When ruling on a motion for a preliminary injunction, a district court must consider and balance four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Blue Cross & Blue Shield Mut. of Ohio v. Columbia/HCA Healthcare Corp.*, 110 F.3d 318, 322 (6th Cir. 1997) (citations omitted).

We review a district court's grant of a preliminary injunction for abuse of discretion. *Mascio v. Pub. Employees Ret. Sys. of Ohio*, 160 F.3d 310 (6th Cir. 1998). "The injunction will seldom be disturbed unless the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard. *Id.* at 312. "This Court 'will reverse a district court's weighing and balancing of the equities only in the rarest of circumstances.'" *Id.* (quoting *Moltan Co. v. Eagle-Picher Indus., Inc.* 55 F.3d 1171, 1175 (6th Cir. 1995)).

## III. DISCUSSION

### A. STANDING

Chabad has standing to bring a facial challenge against the City's ordinance. Chabad seeks to use a traditional public forum for expressive activities during the seven week period for which the City's ordinance prohibits all use of the type in which Chabad seeks to engage. *See Congregation of Lubavitch v. City of Cincinnati*, 997 F.2d 1160, 1164 (6th Cir. 1993) (hereinafter, "*Lubavitch II*") (finding Fountain Square to be "traditional public forum"). Thus, Chabad faces an imminent and concrete injury in fact, directly traceable to the City's ordinance, that is redressable by a decision in its favor.

*See Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 524 (6th Cir. 2001).

The City challenges Chabad's standing on the basis that Chabad did not exhaust its administrative remedies. Without deciding whether a party would ever have to exhaust administrative remedies in order to bring a facial challenge to a regulatory scheme under the free speech clause of the First Amendment, we note that there is no administrative appeals process available to Chabad in this case. The City provides an appeals process for the denial of a permit where the permit seeker contends that its application meets the requirements of the City's permitting scheme. *See* § 713-4(i) (stating that "the sole issue to be decided [on appeal of the denial of the permit to the city manager] is whether the application meets the requirements of this chapter [§ 713] and the city managers rules and regulations for the use of Fountain Square"). However, the portions of § 713 challenged in this case do not act as a permitting scheme at all. Rather, they constitute a flat prohibition on all use of the square of the type that requires a permit during the rest of the year. Chabad did not need to appeal the denial of its permit application in an appeals process that only gives the city manager authority to decide the one issue upon which the parties agree, that § 713 prohibits Chabad's intended use.

## B.   LIKELIHOOD OF SUCCESS ON THE MERITS

The City of Cincinnati enacted Ordinance No. 0122-2002 in order to reserve for itself exclusive use of Fountain Square for a seven week period including the last two weeks of November, all of December, and the first week of January. Appellee Chabad sought to enjoin the City from enforcing the ordinance on several grounds. Finding that Chabad had a "strong likelihood" of success on its free speech claim, the district court did not address any of Chabad's other grounds. The district court did not abuse its discretion when it concluded that the ordinance was a content-based regulation of private speech that does not meet strict scrutiny.

## 1.   NARROWING CONSTRUCTION

As an initial matter, the City submits that the district court abused its discretion by failing to consider a memorandum from the City Manager as a "narrowing construction" of the ordinance. The memorandum provides, in relevant part:

In enforcing the listed provisions, please note that the City's use of Fountain Square merely imposes a restriction prohibiting the types of *private* displays or events that would normally be allowed on the Square following the issuance of a permit....All other types of expression (i.e., carrying political signs, handing out leaflets) will of course be permitted on Fountain Square during this period.

J.A. 506. The memorandum draws a distinction between activities on Fountain Square that require a permit and those that do not. The distinction drawn is clear from the face of the statute, and the memorandum offers no real clarification on the application of the ordinance that is not available from the language of § 713 itself. This is exactly how the district court considered the ordinance: as a "flat ban on all non-governmental use of the Fountain Square *for which one would normally require a permit*." *Chabad of Southern Ohio v. City of Cincinnati*, 233 F. Supp. 2d 975, 985 (S.D. Ohio 2002) (emphasis added). Appellant has pointed to no evidence that the district court took a broader view of the ordinance than that contained in the memorandum and, thus, the district court did not abuse its discretion.[2]

---

[2]Since we agree with the district court that the ban on speech and events that normally require a permit, as described in the City Manager's memorandum, is unconstitutional, we need not consider whether the letter is binding upon the City.

## 2.   MANNER OF SPEECH

The City argues that "there is no free speech right to leave an unattended private structure on public property." Appellant's Brief at 10. To the contrary, whether there is such a right depends upon the property and the government's regulation of that property. We have previously recognized that the display of an object such as a menorah is expressive activity for purposes of the First Amendment. *See Lubavitch II*, 997 F.2d at 1164 (citing *Texas v. Johnson*, 491 U.S. 397, 404 (1989)).

The question in this case is whether Chabad has a right to engage in this type of expressive conduct in Fountain Square. When the property is a traditional public forum, such as Fountain Square, "a State's right to limit protected expressive activity is sharply circumscribed: It may impose reasonable, content-neutral time, place, and manner restrictions." *Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 761 (1995). A manner restriction is a restriction on the manner, or mode, of speech allowed in a public forum. A blanket ban on unattended structures, for example, is a manner restriction that may pass constitutional muster. *See id.*; *Congregation of Lubavitch v. City of Cincinnati*, 923 F.2d 458, 460 (6th Cir. 1991) (hereinafter, "*Lubavitch I*"). The City of Cincinnati, however, does not have such a blanket ban on unattended structures. Indeed, § 713 explicitly authorizes such use of Fountain Square with a permit forty-five weeks of the year.

Thus, Chabad has a First Amendment protected right to leave freestanding unattended structures on Fountain Square, limited only by content-based restrictions that satisfy strict scrutiny and reasonable, content-neutral time, place, and manner restrictions.

## 3.   CONTENT-BASED LIMITATION

The City argues on appeal that the district court incorrectly concluded that the statute was content based and thus

incorrectly applied strict scrutiny to the ordinance. We find that the district court did not abuse its discretion in this way.

The level of scrutiny applied to restrictions on speech in a traditional public forum depends on whether the regulation is content based or content neutral. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). Although the City's ordinance appears content neutral on its face – prohibiting all private speech that normally requires a permit – the district court concluded that it was *de facto* content based because the City's purpose in passing this ordinance was to prohibit controversial and unpopular content from being expressed in the Square during the holiday season. The district court was not clearly erroneous in reaching this factual conclusion.

The district court concluded that the present ordinance was motivated by a desire to prevent unpopular or controversial speech, in part, because the ordinance itself makes explicit the City's intent to prohibit such speech because the exclusive-control provision was designed to permit the city to ensure that the winter holiday display "appeals to the widest of audiences."[3]  Ordinance No. 0122-2002. The district court

---

[3] The district court noted, as well, that the City has a long history of trying to regulate speech in Fountain Square, enacting a parade of ordinances that have attempted to prohibit unpopular or controversial speech on that prime real estate. *See Knight Riders of the Ku Klux Klan*, 72 F.3d 43, 46 (6th Cir. 1995); *Lubavitch II*, 997 F.2d 1160, 1164 (6th Cir. 1993); *Lubavitch I*, 923 F.2d 458, 460 (6th Cir. 1991). In the present matter, Chabad presented testimony that it applied for its 2001 and 2002 permits simultaneously in November 2001 because the City's Director of Public Service had advised Rabbi Kalmanson that it would be in Chabad's best interest to apply as early as possible as the City was granting permits on a "first come, first served" basis in an effort to curb the Ku Klux Klan's ability to erect a cross on Fountain Square. Although this history is of limited probative value in evaluating the current ordinance, not in force in November 2001, the district court properly noted that it could inform its understanding of the present evidence regarding the City's purpose and intent in enacting the ordinance. *See Lubavitch II*, 997 F.2d at 1164.

reasoned that "[b]y excluding from the public discourse on Fountain Square speech which would not appeal to 'the widest of audiences,' the City wishes to eliminate speech which might be controversial or offensive to those visiting downtown Cincinnati." *Chabad*, 233 F. Supp. 2d at 984.

Although the language in the ordinance about appealing "to the widest of audiences" might be read as merely describing the type of speech in which the City wished to engage, the district court's conclusion that this language indicates a desire to eliminate controversial or offensive speech is amply supported in the record.[4] For example, the ordinance explains that appealing "to the widest of audiences" is why it is exerting exclusive control, not why it is speaking in the first place. *See* Ordinance No. 0122-2002 ("With exclusive control over its content and design, the City will be able to ensure that the winter display...appeals to the widest of audiences...."). This suggests that the exclusive-use provision is at least as much about excluding other messages as it is about giving the City the opportunity to deliver its own. Thus, the district court's factual determination that the City's

---

The Court, of course, evaluates each ordinance on its own merits and would not find against the City merely because of its prior bad acts. An otherwise constitutional regulation cannot be unconstitutional simply because of a bad history on the part of a government entity. Nonetheless, in a case such as this, the City's past actions regarding the same forum, parties, and conduct can inform the inquiry into the City's purpose regarding a new ordinance and the meaning of the evidence available regarding the new ordinance.

[4] If the ordinance were read merely to indicate the type of speech the City intended to present when it acted as a speaker in the square, it would not matter whether the City intended its speech to appeal to a wide audience or to be uncontroversial because "when the State is the speaker, it may make content based choices." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 833 (1995). All government speech presumably has some content, and we do not wish to imply that the government is engaged in content discrimination every time it speaks.

purpose in enacting the ordinance was to prevent unpopular and controversial speech is not clearly erroneous.

The district court did not abuse its discretion when it concluded – based on its factual finding regarding the City's purpose – that the exclusive-control provision was content based. Distinctions between speech that is "acceptable" because it appeals to "the widest audiences" and speech that is too "controversial" or unpopular to appeal to a wide audience are distinctions based on content. *See United Food & Commercial Workers' Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341 (6th Cir. 1998); *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 96 (1972).

Content-based restrictions on speech in a public forum must be narrowly tailored to achieve a compelling government interest. *Perry Educ. Ass'n*, 460 U.S. at 45. The City, focusing its arguments on whether or not strict scrutiny is the inappropriate standard of review in this matter, has not argued on appeal that the interests provided in the ordinance are "compelling government interests" or that the ordinance is narrowly tailored to such interests, and we shall not revisit this aspect of the district court's opinion.

## C.  IRREPARABLE HARM TO PLAINTIFF

Defendant-Appellant suggests that Plaintiffs-Appellees' motion for a preliminary injunction could have been denied by the district court solely on "equitable" grounds and urges us reverse the district court's decision on these grounds alone. We understand this to be an attack on the district court's decision that the movant would suffer irreparable injury without the injunction.

Specifically, the City argues that Chabad's need for a preliminary injunction was contrived, arising only as a result of Appellees' own delay in filing their complaint and motion for a  preliminary injunction.  Chabad learned that its

application for a permit was denied six months prior to the date Chabad actually filed this lawsuit and, in the meantime, "apparently attempted to lobby individual City officials who did not possess legal authority to override the new ordinance." Appellant's Brief at 7. While not condoning any dallying on the part of Chabad, we note that "[e]ven minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief." *Newsome v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989). Considering the strength of Appellee's case and the City's subsequent failure to make a strong showing with regard to the district judge's conclusions of law, as discussed above, we do not find this delay to be sufficient grounds for a reversal of the district court's decision to grant the preliminary injunction. The district court did not abuse its discretion when it concluded, based on Chabad's likelihood of success on the merits and the seriousness of any infringement upon First Amendment rights, that Chabad faced irreparable harm despite having waited to file the lawsuit.

## D.   NO IRREPARABLE HARM TO CITY

The district court noted that "[n]o substantial harm can be shown in the enjoinment of an unconstitutional policy," nor has the City argued any particular irreparable harm that it faces. *Chabad*, 233 F. Supp. 2d at 987 (citing *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville and Davidson County, Tennessee*, 274 F.3d 377, 400 (6th Cir. 2001), *cert. denied*, 535 U.S. 1073 (2002)).

## E.   PUBLIC INTEREST SERVED BY INJUNCTION

Finally, the public interest is served by preventing the violation of constitutional rights. *Id*.

## VI.   CONCLUSION

Having considered the record in this matter, we determine that the district court did not abuse its discretion when it

granted Chabad's motion for a preliminary injunction and enjoined the City from enforcing CMC § 713. For the reasons stated above, we **AFFIRM** the decision of the district court.