RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0070p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

LYNN D. TUCKER, JR., et al.

　　　　　　　　*Plaintiffs-Appellees,*

　　　*v.*

CITY OF FAIRFIELD, OHIO, et al.

　　　　　　　　*Defendants-Appellants.*

No. 03-4508

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 03-00607—Sandra S. Beckwith, Chief District Judge.

Argued: December 9, 2004

Decided and Filed: February 11, 2005

Before: KENNEDY, MARTIN, and MOORE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** John H. Clemmons, MILLIKIN & FITTON, Fairfield, Ohio, for Appellants. David M. Cook, LAW OFFICE OF DAVID M. COOK, Cincinnati, Ohio, for Appellees. **ON BRIEF:** John H. Clemmons, Thomas A. Dierling, MILLIKIN & FITTON, Fairfield, Ohio, Wilson G. Weisenfelder, Jr., Laura I. Munson, RENDIGS, FRY, KIELY & DENNIS, Cincinnati, Ohio, for Appellants. David M. Cook, Robert E. Rickey, Stephen A. Simon, LAW OFFICE OF DAVID M. COOK, Cincinnati, Ohio, for Appellees.

　　　　MARTIN, J., delivered the opinion of the court, in which MOORE, J., joined. KENNEDY, J. (pp. 6-9), delivered a separate dissenting opinion.

_____

## OPINION

_____

　　　　BOYCE F. MARTIN, JR., Circuit Judge. The City of Fairfield appeals the district court's grant of a preliminary injunction prohibiting the City on First Amendment grounds from enforcing a municipal ordinance against Lynn Tucker, Jr. and other members of his union in their use of a rat balloon as part of demonstrations in a public right-of-way. For the following reasons, we AFFIRM the judgment of the district court.

## I.

　　　　Lynn Tucker, Jr. is the General Vice President of the Eastern Regional Office of the International Association of Machinists and Aerospace Workers. Tucker and several of his fellow union members picketed Fairfield Ford, a car dealership in Fairfield, Ohio, on three primary occasions in 2003 (February 26,

July 1, and July 31) for alleged unfair labor practices. The protests all took place in the public right-of-way between Fairfield Ford and Dixie Highway, with each involving somewhere between twenty-five and forty protesters and generally lasting between one and two hours.

During these protests, Tucker and his colleagues held signs and displayed an inflatable rat balloon measuring approximately twelve feet high and eight feet in diameter. The rat has long been used as a symbol of efforts to protest unfair labor practices. The rat balloon in the instant case can be inflated or deflated within five to ten minutes, and is temporarily secured to the ground with stakes to ensure that it does not tip over.

The conflict in this case arises out of the application of the City's ordinance prohibiting structures in the public right-of-way to the Union's use of the rat balloon. Section 905.03(c) of the municipal code provides that "[n]o person, firm or corporation shall construct or place or cause the construction or placement of any . . . structure or improvement . . . on any street, alley, public right-of-way, easement or public grounds without the written permission of the Public Works Director." As originally enacted, the ordinance defined "structure" as "anything constructed, the use of which requires permanent location on the ground or attachment to something having permanent location on the ground, and also includes anything constructed which is not enclosed within another structure and is placed in a stationary location." The City later amended the definition of "structure" on September 13, 2003, with the express intent of covering the use of the balloon in this case.[1] The amendment defined a "structure" in relevant part as "any object, whether permanent or temporary, including, but not limited to, non-public signs, that is constructed, erected or placed in a stationary location on the ground or is attached to or placed upon an object constructed, erected, or placed in a stationary location on the ground."

The first demonstration using the rat balloon in front of Fairfield Ford occurred on February 26, 2003. While the Union notified the police that they would be using the balloon during its protest, and Fairfield Ford called the police to complain about the demonstration, no arrests were made or citations issued over the use of the balloon. The second demonstration occurred on July 1 at the same location. The Union again notified the police of its plans to protest. This time, Janette Mattala, a zoning inspector for the City, came to the scene and warned the protestors that they would have to remove the balloon or be subject to arrest. Police officers, who later arrived on the scene, also allegedly threatened the protestors with arrest. Consequently, the protesters deflated the balloon. The third demonstration occurred on July 31. During this protest, Tucker and his fellow Union members again displayed the rat balloon. At this demonstration, however, Tucker was given a citation for violating the city ordinance prohibiting structures in the public right-of-way. Notably, there is no evidence in the record indicating that the protests, including the use of the balloon, created any obstruction or safety hazard.

On August 27, 2003, Tucker and his Union filed a Complaint, Motion for a Temporary Restraining Order, and Motion for a Preliminary Injunction in the District Court for the Southern District of Ohio, claiming that the application of the City's ordinance to the use of the balloon violated the First Amendment. On August 29, the court issued a temporary restraining order, which expired on September 15. The court then held a hearing on the preliminary injunction on September 15, and, on October 27, granted Tucker's motion for a preliminary injunction, finding, among other things, that Tucker had demonstrated a likelihood of success on his claim that the City's efforts to prevent the Union from using the balloon during its demonstrations violated the First Amendment. The City timely appealed that decision to this Court on November 7, 2003.

---

[1] The Fairfield City Council's express intent to cover "objects such as the inflatable rat involved in the *Tucker* litigation" is illustrated by the amendment's preamble, which clearly states that the Council's purpose in enacting the amendment was "to amend its codified ordinances to further clarify that objects such as the inflatable rat are prohibited from the public right-of-way whether placed there on a temporary or permanent basis."

II.

The only question presented in this case is whether the district court erred in granting a preliminary injunction prohibiting the City of Fairfield from restraining Tucker and his union from using the rat balloon during their labor protests on the public right-of-way in front of Fairfield Ford. This Court reviews a district court's grant of a preliminary injunction for an abuse of discretion. *Keweenaw Bay Indian Cmty. v. Michigan*, 11 F.3d 1341, 1348 (6th Cir. 1993). A district court abuses its discretion when it relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard. *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377, 400 (6th Cir. 2001).

When determining whether to grant a preliminary injunction, a district court must consider: "(1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of an injunction upon the public interest." *Id.*

The district court considered these four factors and granted Tucker's motion for a preliminary injunction. The court found that Tucker had "a very high likelihood of success on the merits" of his claim based on "a First Amendment right to use portable, non-obstructive props to disseminate information in a public right-of-way on a temporary or limited basis." The court held that the ordinance, as applied to the use of the rat balloon, unconstitutionally infringed on this right. The court also found that the remaining factors weighed in favor of granting the injunction. According to the court, the suppression of Tucker's protected speech constituted irreparable harm to the Union and the use of the balloon was not shown to harm others. Moreover, the court found that the public interest weighed in favor of protecting First Amendment rights. Consequently, the court, having found all factors in Tucker's favor, issued the preliminary injunction. For the following reasons, we hold that the district court did not abuse its discretion in granting the preliminary injunction.

A.

The First Amendment broadly provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. In our view, there is no question that the use of a rat balloon to publicize a labor protest is constitutionally protected expression within the parameters of the First Amendment, especially given the symbol's close nexus to the Union's message. *See, e.g., Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Village of Orland Park*, 139 F. Supp. 2d 950, 958 (N.D. Ill. 2001) ("We easily conclude that a large inflatable rat is protected, symbolic speech.").

The central claim asserted by the City on appeal is that there is no constitutional right to maintain a structure in a public right-of-way. As this Court has pointed out before, however, "whether there is such a right depends upon the property and the government's regulation of that property." *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 434 (6th Cir. 2004).

Courts have generally refused to protect on First Amendment grounds the placement of objects on public property where the objects are permanent or otherwise not easily moved. For instance, in *Graff v. City of Chicago*, 9 F.3d 1309, 1314 (7th Cir. 1993) (en banc), the court considered whether a news vendor had a First Amendment right to maintain a newsstand on public property. The court rejected the claim, holding that "no person has a constitutional right to erect or maintain a structure on the public way." *Id.* As the *Graff* court pointed out, however, newsstands are "large, permanent-type structures" that "are not easily moved." *Id.* at 1315. In distinguishing newsstands from newsracks, which have received more favorable First Amendment protection, *see City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 772 (1988) (holding unconstitutional an ordinance giving the mayor discretion to grant or deny applications for permits to place newsracks on public property), the court expressly noted that "newsstands compared to newsracks are much larger, more permanent structures that occupy a significant portion of limited sidewalk space." *Graff*, 9 F.3d at 1315.

A similar result was reached in *Lubavitch Chabad House, Inc. v. City of Chicago*, 917 F.2d 341, 346-48 (7th Cir. 1990), where the court rejected a constitutional challenge to the City's refusal to allow a menorah to be erected in a public area of O'Hare Airport during Christmas time.  The court noted the difficulty that would be involved in allowing all individuals to erect "free-standing" structures on public grounds, and expressly found no constitutional right to do so.  *Id.* at 347.

Unlike the more permanent structures analyzed in *Graff* and *Lubavitch*, the balloon in the instant case is temporary and easily movable.  The Union only uses the balloon during its protests, which last just one to two hours, and the balloon has not been shown to cause any danger that could justify a restriction of the balloon's use.  As the district court pointed out, at least one federal court has adopted a similar approach in analyzing whether the use of "structures" on public property is constitutionally protected speech.  *See One World One Family Now, Inc. v. Nevada*, 860 F. Supp. 1457, 1462-63 (D. Nev. 1994) (holding that group's portable tables were afforded First Amendment protection because of their limited use in facilitating the sale of expressive t-shirts, while chairs, umbrellas, and boxes were not protected because they were not sufficiently related to the expressive message and constituted "permanent-type" structures).  Thus, given the existing case law on this subject, we hold that the district court did not abuse its discretion in finding that the use of the portable rat balloon on the public right-of-way is deserving of First Amendment protection.

Having held that the district court did not abuse its discretion in finding that the use of the balloon on the public right-of-way is constitutionally protected expression, the issue next becomes whether the City may nevertheless prohibit Tucker and his Union from using the balloon during its protests.  "The Supreme Court has adopted a forum analysis 'as a means of determining when the government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes.'"  *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 746 (6th Cir. 2004) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985)).  Three types of fora are generally recognized: the traditional public forum, the designated public forum, and the nonpublic forum.  *Id.*  A traditional public forum is a place "which by long tradition or by government fiat ha[s] been devoted to assembly and debate."  *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983).  In our view, the district court did not abuse its discretion in finding that the forum in this case—a public right-of-way—is a traditional public forum, given the fact that both streets and sidewalks are generally considered traditional public fora.  *See, e.g., Frisby v. Schultz*, 487 U.S. 474, 480 (1988) (noting its decisions holding that streets and sidewalks are traditional public fora); *Rappa v. New Castle County*, 18 F.3d 1043, 1070-71 (3d Cir. 1994) (holding that public rights-of-way are properly considered traditional public fora).

"In traditional public fora, 'the rights of the state to limit expressive activity are sharply circumscribed': the government may enforce . . . content-neutral time, place, and manner regulations only if they are 'narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'"  *Kincaid v. Gibson*, 236 F.3d 342, 348 (6th Cir. 2001) (quoting *Perry*, 460 U.S. at 45).  The district court found that the ordinance here was not a content-based restriction on speech, and that finding apparently is not challenged before us.  Thus, for the purposes of this appeal, we assume that this finding was correct.[2]  Therefore, the ordinance is constitutional as applied if it is narrowly tailored to serve a significant government interest, leaving open other alternative channels of communication.

In this context, "the requirement of narrow tailoring is satisfied so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation," and does not "burden substantially more speech than is necessary to further the government's legitimate interests."  *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) (quotation marks and citations omitted).

---

[2] We note that it appears that the amended ordinance, with its express purpose of prohibiting the use of the rat balloon, may not be content-neutral.  We reserve judgment on this question, however, until the district court fully considers the issue on the merits.

Importantly, however, the regulation "need not be the least-restrictive or least-intrusive means" of serving the government's interests. *Id.* We agree with the district court's finding that the ordinance does not appear to be narrowly tailored as applied to the Union's use of the balloon. In our view, the asserted government interests of keeping the public right-of-way clear and preserving the aesthetics of the community, while generally considered substantial, are simply not achieved any less effectively absent the application of the ordinance in this case. There is no objective evidence in the record before us suggesting that the temporary placement of the balloon in the public right-of-way has any adverse effects, such as obstruction of pedestrian or automobile traffic. By applying the ordinance to prohibit the temporary use of the balloon in this case, it therefore appears that the City has applied its ordinance in a manner that is "substantially broader than necessary" to achieve its interests. *See, e.g., Cleveland Area Bd. of Realtors v. City of Euclid*, 88 F.3d 382, 388 (6th Cir. 1996) (holding unconstitutional ordinances regulating the placement of signs in residential neighborhoods because they burdened "substantially more speech than necessary," despite city's "significant government interest" in aesthetics). Thus, the district court did not abuse its discretion in finding that the Union has demonstrated a likelihood of success on the merits.

B.

The district court also found that the remaining factors weighed in favor of granting the injunction. The City does not appear to challenge these holdings on appeal. We note, however, that the district court's decision on each issue was proper. First, the application of the City's ordinance prohibiting the Union's use of the balloon, and the consequential adverse effect on Union organizational efforts, are sufficient to constitute irreparable harm. *See, e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Second, the use of the balloon in the right-of-way has not been shown to create any obstruction or other safety hazard, suggesting that granting the injunction will not cause substantial harm to others. Finally, the public interest factor in this case clearly weighs in favor of protecting the First Amendment rights of the Union's members. *See, e.g., Chabad*, 363 F.3d at 436 (noting that "the public interest is served by preventing the violation of constitutional rights"). Accordingly, the district court did not abuse its discretion in holding that the relevant factors support the issuance of the preliminary injunction in this case.

III.

For the stated reasons, we hold that the district court did not abuse its discretion in granting Tucker's motion for a preliminary injunction, and we therefore AFFIRM the decision of the district court.

––––––––––––––––––

**DISSENT**

––––––––––––––––––

KENNEDY, Circuit Judge, dissenting. Unlike the majority, I would find that the Union is unlikely to succeed on the merits. Therefore, I believe that the district court abused its discretion when it improperly applied the law. *Deja Vu of Nashville, Inc., V. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377, 400 (6th Cir. 2001). Additionally, I do not believe that the other factors (irreparable harm, harm to others, and the public's interest), many, if not all, of which rest on the perceived violation of the Union's First Amendment rights, weigh so heavily in favor of the plaintiffs that those factors support the grant of a preliminary injunction. Therefore, I respectfully dissent.

A.       Likelihood of success on the merits

1.       The rat is a structure.

As a preliminary matter, there are several points on which the district court, the majority, and I agree. First, we agree that the rat constitutes speech. Furthermore, we agree that the rat constitutes speech that deserves First Amendment protection. Implicitly at least, we all agree that the City's ordinance applies to the rat (making the rat a structure under either the first or the revised definition). The district court attempts to avoid this conclusion by holding that "It is not appropriate to simply label the rat a structure and then ban it from the right-of-way without examining the nature of the alleged structure." Apx. 46. The majority opinion does not explicitly address whether the rat is a structure, but, by applying a time, place, and manner analysis, it too implicitly agrees that the inflatable rat is a structure under either version of the ordinance's definition.

Although I may seem to be quibbling over details, I am not. Courts must avoid raising constitutional issues where alternative and narrower grounds exist. *Bejjani, v. I.N.S.*, 271 F.3d 670, 687 (6th Cir. 2001). If the rat is not a structure as the ordinance defines it (or defined it), then the district court erred in ruling on a First Amendment basis where none was present. Instead, it should have held that the rat was not a structure and ordered the City to cease attempting to apply the ordinance to the rat. Because the district court rules on First Amendment grounds and because the majority reviews that analysis, the majority seems to agree (at least implicitly) that the inflatable rat falls under the ordinances' definitions of structure.

In my view, the rat is a structure under either version of the ordinance. Even under the earlier ordinance, the City defined a structure, in part, as: "...anything constructed which is not enclosed within another structure and is placed in a stationary location." Although the first part of the definition includes a requirement that the structure be permanent, this second part does not. Dictionary.com defines constructed as: "To form by assembling or combining parts; build." (*available at* http://dictionary.reference.com/search?q=constructed). The Random House College Dictionary Revised Edition defines construct as "to form by putting together parts; build; devise." 1980.

By using a generator to inflate the rat on a tarp, the rat is assembled or formed by putting together parts. By tethering it to the ground, the rat is further formed by combining parts. Given these definitions, the inflatable rat meets the ordinance's requirement that it be constructed. In addition, the rat satisfies the "placed in a stationary location" requirement given that the rat and its generator are placed in a stationary location when they are staked down, albeit, for one to two hours, or for however long the Union decides to leave them there. Therefore, the rat meets all of the requirements under this portion of the first ordinance's

definition of structure.[1] No one disputes that the rat meets the City's revised definition of structure. Because the rat is a structure, and because both versions of the ordinance ban all structures in right-of-ways, we must address the constitutional question of whether the City can use its ordinance to ban the rat despite the fact that the rat is speech.

      2.      The ordinance is a permissible time, place, and manner restriction.

We also agree on most points of the First Amendment analysis. I agree with the district court and the majority that the right-of-way is a traditional public forum; that the area where the rat was erected was akin to a sidewalk; and that time, place, and, manner analysis is the appropriate framework for reviewing the ordinance as applied.

When performing a time, place, and manner analysis, courts must evaluate the ordinance against several standards. First, courts must determine whether the ordinance is content neutral. No one disputes that the City's ordinance is content neutral. It is important to keep in mind that the ordinance applies city-wide to all rights-of-way whether there are sidewalks and a tree lawn, or just a grassy area as we have here.

Next under time, place, and manner analysis, we evaluate whether the City has a significant interest as well as whether the ordinance is narrowly tailored to meet that interest. All agree that the City has a significant interest. The majority identifies the City's significant interests as keeping the right-of-way clear (presumably to further public safety and permit pedestrian passage) and preserving the aesthetics of the community. I agree that those interests are significant. *See Ward, et al., v. Rock against Racism*, 491 U.S. 781, 796 (1989) (noting that protecting citizens from excessive noise is a significant government interest); *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 781-82 (1988) (identifying public safety as a significant interest); *Clark v. Community for Creative Non-Violence, et al.*, 468 U.S. 288, 296 (1984) (identifying keeping our nation's parks in an attractive condition as a significant interest); *Heffron, et al., v. International Society for Krishna Consciousness*, 452 U.S. 640, 650 (1981) (upholding the state's interest of maintaining the orderly movement of crowds at a fair).

The majority and I part company, however, in our view of whether the ordinance is narrowly tailored to serve the identified significant government interests. The majority believes that the ordinance is not narrowly tailored. In so holding the majority reasons:

> [The interests] are simply not achieved any less effectively absent the application of the ordinance in this case. There is no objective evidence in the record before us suggesting that the temporary placement of the balloon in the public right-of-way has any adverse effects, such as obstruction of pedestrian or automobile traffic. By applying the ordinance to prohibit the temporary use of the balloon in this case, it therefore appears that the City has applied its ordinance in a manner that is "substantially broader than necessary" to achieve its interests. Thus, the district court did not abuse its discretion in finding that the Union has demonstrated a likelihood of success on the merits.

Maj. Op. (internal citation omitted). I believe that the majority departs from Supreme Court precedent, which admonishes lower courts that a regulation is narrowly tailored so long as it " . . . promotes a substantial government interest that would be achieved less effectively absent the regulation." *United States v. Albertini*, 472 U.S. 675, 689 (1985). In *Frisby v. Schultz*, 487 U.S. 474, 485 (1988) the Court indicated

---

[1] The revised ordinance defines structure as ". . . any object, whether permanent or temporary, including, but not limited to, non-public signs, that is constructed, erected or placed in a stationary location on the ground or is attached to or placed upon an object constructed, erected or placed in a stationary location on the ground." By including "any object, whether permanent or temporary," the ordinance alleviates the district court's concern that the earlier ordinance might have only applied to permanent structures. As I discuss later, I do not believe that one can look to the nature of a structure in determining whether the city can constitutionally ban it through a time, place, and manner restriction.

that a complete ban "can be narrowly tailored but only if each activity within the proscription's scope is an appropriately targeted evil." In *Ward,* the Court clarified its earlier jurisprudence by confirming that: "So long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Ward*, 491 U.S. at 800. Thus, the Court has indicated that, in this context, the narrowly tailored test is a far more lenient test than a least restrictive means test. *Id*. Indeed, some amount of overinclusiveness is permissible provided that the evil targeted by the statute is permissible. *See id*. (The Court indicates that "the...regulation may [not] burden substantially more speech than is necessary" indicating that some overinclusiveness may be permissible).

In finding that the ordinance is not narrowly tailored, the district court held that it was important to investigate the nature of the structure. Apx. 46. The majority seems to agree with that analysis. I believe that investigating the nature of the structure, beyond what little investigation is required to determine whether an object is a structure, is an incorrect mode of analysis that has the effect of saddling the City with an impossible legislative task, or requiring courts to reach necessarily arbitrary results. Why does a structure whose nature only requires it to be present for a limited time not undermine the City's objective of keeping the right-of-way clear when a more permanent structure does so? The district court indicates that if the Union wished to leave the inflatable rat in the right-of-way constantly, it would reach a different result. Apx. 46. What exactly constitutes "an extended period of time" that would require resolving this dispute in the City's favor? *Id*. Four hours? Ten? Twenty-four? Alternatively, what public employee is to be given the discretion to determine that amount of time, and how is that discretion to be limited so that time, place, and manner neutrality is maintained?

While I do not want to belabor the line-drawing problems, I raise them simply because I do not believe that the district court's position is a tenable way to evaluate the level of protection the structure deserves. Instead, I believe that we must look to the significant interest and then determine whether the ordinance narrowly targets the identified evil. *Ward*, 491 U.S. at 799-800.

In evaluating whether the ordinance is narrowly tailored to serve the significant interest, it is, in my view, also important to evaluate whether the ordinance serves a significant interest, and whether it is narrowly tailored, independently of the value courts accord the speech. The majority believes that: "By applying the ordinance to prohibit the temporary use of the balloon *in this case*, it therefore appears that the City has applied its ordinance in a manner that is 'substantially broader than necessary' to achieve its interests." Maj. Op. (emphasis mine). Although this is an as-applied analysis, the majority's rule on narrow tailoring quickly becomes an easy way for courts to second guess legislatures. Courts would be able to carve out exceptions to the enforcement of ordinances if the court deems the speech at issue vital enough simply by balancing the identified interest against the value of the speech. In essence, judges would be able to substitute their own judgments as to the value of different kinds of speech in an as-applied challenge and balance that speech with their view of the value of the government interest at stake. My guess is that, subjected to such a balance, few ordinances would survive unscathed. Nor can the City leave to the discretion of some city employee that decision without running afoul of the Court's decision in *Plain Dealer,* 486 U.S. at 763-4 ("[W]e have often and uniformly held that such statutes or policies impose censorship on the public or the press, and hence are unconstitutional, because without standards governing the exercise of discretion, a government official may decide who may speak and who may not based upon the content of the speech or viewpoint of the speaker.").

While protecting speech is undoubtedly among the most important things the judiciary does, the Supreme Court's jurisprudence on time, place, and manner restrictions does not subject those restrictions to such rigorous or arbitrary scrutiny. So long as, in general, the City has a significant government interest, and so long as the ordinance is narrowly tailored to serve that interest, as is the case here, it should not matter what type of speech is affected by the ordinance for the purpose of this portion of time, place, and manner analysis. Thus, we should evaluate an ordinance's narrow tailoring only in relation to the identified significant government interest and not in relation to the speech it affects.

Given that the interest here is keeping the right-of-way clear, an outright ban of structures is a reasonably narrow means of serving that interest. The right-of-way is blocked by a structure regardless of whether that structure is present for one hour or one year. Part of the public safety rationale that forms the basis for keeping the right-of-way clear likely involves allowing emergency vehicles free access to it in the event of a problem. If a structure is present in the right-of-way for any period of time, that significant interest is diminished. While it is true that a structure present for two hours diminishes the interest less than would a structure present for a much longer time, all that the City needs to show in order to prove narrow tailoring is that the evil targeted is remedied by the ordinance in a manner that is not unnecessarily overinclusive. I believe that the ordinance in this case meets that standard and is, therefore, narrowly tailored to serve the significant interest.[2]

Because I believe that the ordinance is narrowly tailored to serve a significant interest, I must also address the final portion of time, place, and manner analysis, which requires that the ordinance in question "leave open ample alternative channels of communication . . .". *Ward*, 491 U.S. at 802. Ample alternative channels of communication are readily available here.

The City's complaint, at least the one identified in the briefs and at oral argument, is not that the rat is present at all in the right-of-way, instead, the City objects to it being staked down and kept in place. The Union indicates that the rat could be moved around instead of staking it down. Apx. 159-61. In addition, presumably, so long as the rat was placed on a cart or a wagon and provided that the cart or the wagon was moved about during the demonstration, the City would not object to its presence as the ordinance would not apply. Even if I am incorrect and the inflatable rat itself could not be used, the Union could still make signs with pictures of rats on them, pass out smaller rat balloons to passers-by, or use many other methods to communicate its message. Ample alternative channels of communication are available here. Therefore, because I believe that the ordinance as-applied to the rat passes the time, place, and manner tests, I believe that the Union is unlikely to succeed on the merits of its case.

B.      Other factors

Given that I do not believe that the Union is likely to succeed on the merits, I do not believe that it would suffer irreparable harm if the injunction is not granted. Furthermore, given that the Union has ample alternative channels of communication available to it, I believe that any harm it would suffer would be minimal. Therefore, this factor, at best, does not weigh in favor of either party, and it may weigh in favor of not granting the injunction. Finally, although the majority believes that "the public interest factor in this case *clearly* weighs in favor of protecting the First Amendment rights of the Union's members[.]" (citation omitted) (emphasis mine), I believe that this interest must be balanced with the public interest in local governments being able to legislate and enforce laws that those governments deem necessary. Therefore, I do not believe that this factor is clearly in favor of either party even if the constitutional issues do tilt the balance one way. Finally, while granting the injunction will likely not harm others, that factor alone cannot save the district court's grant of a preliminary injunction, even on abuse of discretion review.

C.      Conclusion

Because I believe that the City's ordinance is a permissible time, place, and manner restriction, that that fact means that the Union is unlikely to succeed on the merits of its case, and because I do not believe that the other factors point clearly in one direction, I believe that it was an abuse of discretion for the district court to grant the preliminary injunction. I would reverse the district court's grant of a preliminary injunction and remand for further proceedings.

---

[2]The above analysis also applies to the aesthetic significant interest of the city. The city's aesthetic goals are diminished the moment a structure is constructed in the right-of-way.