NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0225n.06

No. 24-1888

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 01, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| KAMRYN RANDLE, | ) | |
|     Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| LADEL LEWIS, et al., | ) | |
|     Defendant-Appellees. | ) | OPINION |
| | ) | |

Before: SUTTON, Chief Judge; SILER and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Plaintiff-Appellant Kamryn Randle appeals the dismissal of her First Amendment claims arising from her being forced to leave a Flint City Council meeting. We AFFIRM.

## I.     Background

### A.  Factual Background

Randle attended and videorecorded a Flint City Council (the Council) Meeting on June 5, 2023, as "support staff for Councilman Eric Mays and his attorneys." R. 22, PID 460; R. 25, PID 540; Appellant's Br. at 8. The Council livestreams and stores official meeting footage filmed using a fixed-lens stationary camera on its YouTube channel. https://perma.cc/FQ6Q-AZDU. However, Randle wanted to record her own footage to share via social media.

Near the end of the meeting, Defendant Councilwoman Eva Worthing raised a point of order asking that the chair, Defendant Councilwoman Ladel Lewis, instruct Randle to turn off the light on her camera because Worthing is "sensitive to light" and the light, which was in her eyes,

was giving her a headache.  R. 25-4, PID 596–98, 603.  After asking Randle several times to turn off the light, Lewis told Randle that she needed to turn off the light or leave the meeting.  Lewis made it clear that the only issue was the light.  *Id.* at PID 601 ("Ma'am, you are definitely welcome to record, but please cease and desist with the lighting.").

Mays challenged Lewis' ruling.  After a heated debate, five Council members—Defendants Lewis, Worthing, Judy Priestly, Dennis Pfeiffer, and Quincy Murphy—voted to uphold the ruling.  During the debate, Lewis reiterated that the only problem was the camera light.  *Id.* at PID 612 ("[I]f she wants to record, block the light so we can proceed.  That's all we want to do.").  In response to a question from Worthing, Defendant City Attorney William Kim said there was no legal issue with ordering Randle to turn off the light.

As the meeting became more contentious, Defendant Flint City Police Officer William Metcalfe, who was on duty at the meeting, went into the hall and called a supervisor to seek guidance.  Metcalfe's supervisor told him that if Randle refused to comply with Lewis' ruling and the Council ordered Metcalfe to arrest Randle, he could arrest her.  After the Council voted to uphold Lewis' ruling, Metcalfe approached Randle and said, "you're going to have to keep that light off or you're gonna have to leave, okay?"  Body Camera Footage at 10:34–10:42; R. 25-6, PID 637.  A partly inaudible exchange between Randle, two unidentified male speakers who appear to be Mays' attorneys, and Metcalfe followed.  During that conversation, one of the unidentified male speakers says that the camera light came on because "[i]t sees that it's too dark in here"; Metcalfe says, "[k]ill the light or you're gonna have to leave"; and Randle says, "I heard you the first time."  Body Camera Footage at 10:43–10:53; R. 25-6, PID 637–38.  The footage from Metcalfe's body camera as he approached Randle shows a conspicuously bright white light on Randle's camera.  It also shows another spectator apparently recording on a cell phone without

using a bright light.  The footage shows no spectators other than Randle using lights to record, and there is no evidence that other spectators were doing so.

Right after voting to uphold Lewis' ruling, as Metcalfe, Randle, and Mays' attorneys were talking, the Council voted to adjourn and ended the meeting without conducting any additional business.  After the Council adjourned, as people were leaving the room, Kim, Metcalfe, and Worthing discussed whether Kim and Metcalfe had heard one of Mays' attorneys "give instructions [to Randle] about shining the light," which Worthing said she had.  R. 25-6, PID 640–41; Body Camera Footage at 12:42–13:07.

## B.  Procedural History

Randle sued Lewis, Worthing, Priestly, Pfeiffer, Murphy, Kim, and Metcalfe (collectively, Defendants) three days after the meeting.  Her Complaint brings two federal-law claims, both against all Defendants except Metcalfe—one for violation of Randle's First Amendment freedom of access and freedom of expression rights (Count I) and one for conspiracy to interfere with Randle's civil rights, in violation of 42 U.S.C. § 1985 (Count II)—and three state-law claims— negligence per se, in violation of the Michigan Open Meetings Act, Mich. Comp. Laws § 15.261 *et seq.*, against all Defendants except Metcalfe (Count III); negligence against Kim (Count IV); and assault against Metcalfe (Count V).

After receiving consent from Plaintiff's counsel, Defendants moved to submit two videos—the official meeting footage and Metcalfe's body-camera footage—and the transcripts from both videos.  They argued, in relevant part, that the district court could consider both videos on a motion to dismiss—the official footage because the Complaint cites it and the body-camera footage because it "'utterly discredit[s]'" Plaintiff's allegations.  R. 17, PID 87–88 (quoting *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386–87 (6th Cir. 2017)).

Defendants then moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. They attached the videos and audio transcripts; the Council's agenda for its June 5th meeting; excerpts from the Flint City Charter; Flint City Ordinance 31-10; the rules governing Council meetings; and several cases.

After the district court informed the parties that it would deny the pending motion to dismiss as moot if Randle amended her complaint within 21 days, Randle amended her complaint, asserting seven claims: First Amendment freedom of access violations against all Defendants except Metcalfe (Count I); First Amendment freedom of expression violations against all Defendants except Metcalfe (Count II); conspiracy to violate Randle's First Amendment rights, in violation of 42 U.S.C. § 1985, against all Defendants except Metcalfe (Count III); violations of the Michigan Open Meetings Act against all Defendants except Metcalfe (Counts IV and V); negligence against Kim (Count VI); and assault against Metcalfe (Count VII). The Amended Complaint includes two exhibits: a 1988 Michigan Attorney General opinion and a 2020 Michigan Court of Appeals case.[1] And it cites the YouTube video of the official meeting footage.

On September 11, 2023, the district court denied Defendants' motion to dismiss the Complaint as moot in light of the Amended Complaint. It also informed the parties that, "[p]ursuant to Federal Rule of Civil Procedure 12(d)[,] the Court intends to treat the motion to dismiss the amended complaint as one for summary judgment, given that it relies on matters outside of the pleadings." R. 24, PID 521.

---

[1] Footnote 1 reads: "Plaintiff intended to provide Certifications and/or Affidavits of various Flint residents who were in attendance . . . , however, given the unexpected hospitalization of Plaintiff's counsel, . . . [they] will be provided separately . . . [.] Plaintiff incorporates said Certifications and/or Affidavits herein by reference." R. 22, PID 461 n.1. Plaintiff filed no affidavits, however.

Defendants moved to dismiss the Amended Complaint four days later, attaching the same exhibits that they had attached to their previous motion to dismiss.[2] Although they argued that the court could consider all those exhibits as part of a motion to dismiss, they framed the motion as satisfying both Federal Rule of Civil Procedure 12(b)(6) and Rule 56.

After seeking two extensions, Randle responded on November 3, 2023—almost two months after the district court told the parties that it intended to treat the motion to dismiss as a motion for summary judgment. She did not argue—either in her response or in her motions for extension—that summary judgment was premature, that she needed additional discovery or more time to submit evidence, or that applying the summary judgment standard was otherwise inappropriate. And she cited no additional evidence as part of her response.

After Defendants replied, the district court treated the motion to dismiss as a motion for summary judgment and granted summary judgment in favor of Defendants. It held that Randle's First Amendment claims failed because (1) she had numerous alternative means of accessing the meeting; (2) the Council's enforcement of its rules prohibiting disorderly conduct satisfied the framework laid out in *S.H.A.R.K. v. Metro Parks Serving Summit County*, 499 F.3d 553 (6th Cir. 2007); and (3) the disorderly conduct rules satisfied the requirements for regulation of expression in a designated and limited public forum. It also held that the § 1985 claim failed for lack of a First Amendment violation and declined to exercise supplemental jurisdiction over the state-law claims.

Randle now appeals the dismissal of her First Amendment claims.

---

[2] The district court instructed Defendants to incorporate the previously uploaded video files by reference and refile all other exhibits.

## II. Discussion

## A. Conversion to Motion for Summary Judgment

On appeal, Randle first argues that converting the motion to dismiss to a motion for summary judgment was a "critical error," and that the district court should have allowed more time for discovery before granting summary judgment. Appellant's Br. at 23. We do not consider this argument because it is doubly forfeited.

Federal Rule of Civil Procedure 56 provides two primary ways for a nonmovant to avoid summary judgment. One is to show a "genuine dispute as to any material fact," thus satisfying the familiar summary judgment standard. Fed. R. Civ. P. 56(a). The other is to notify the district court that additional discovery is necessary before a ruling on a motion for summary judgment by filing an "affidavit or declaration that, for specified reasons, [the nonmovant] cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).

Randle did not pursue the second avenue during the nearly two months between when the district court stated its intention to convert the motion to dismiss and when she responded to the motion. She neither filed a Rule 56(d) affidavit nor otherwise informed the district court that additional discovery was necessary. *See Unan v. Lyon*, 853 F.3d 279, 292–93 (6th Cir. 2017) ("[F]iling an affidavit that complies with Rule 56(d) is essential, and . . . in the absence of such a motion or affidavit, this court will not normally address whether there was adequate time for discovery." (quotation marks and citation omitted)); *Mattingly v. R.J. Corman R.R. Grp., LLC*, 90 F.4th 478, 492 (6th Cir. 2024) ("[T]he non-movant bears the obligation to inform the district court of his need for discovery by complying with Federal Rule of Civil Procedure 56(d). . . . If a non-movant fails to comply with Rule 56(d), the issue of whether summary judgment was prematurely entered because additional discovery was required is not preserved for appeal." (cleaned up)); *see*

*also Plott v. Gen. Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1196 (6th Cir. 1995). Thus, Randle's failure to raise the issue in the district court forfeits it on appeal.

Randle also failed to properly raise the issue in this court. Her opening brief lists two issues, asking whether the district court "failed to view the evidence in the light most favorable to Randle" and "misapplied the First Amendment jurisprudence" when ruling on her First Amendment claims. Appellant's Br. at 3–4. Neither issue addresses whether the district court should have allowed more time for discovery. The issue is thus not properly before us. *McCarthy v. Ameritech Publ'g, Inc.*, 763 F.3d 488, 494 (6th Cir. 2014) ("[The appellant] did not preserve this argument because she did not include it in her statement of the issues presented for review, as mandated by Federal Rule of Appellate Procedure 28(a)(5).").

## B.  Merits of the First Amendment Claims

### 1.     Standard of Review

"The court reviews *de novo* the district court's grant of summary judgment, applying the same standards as the district court." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making that determination, "the court views the evidence in the light most favorable to the nonmoving party," and draws all reasonable inferences in the nonmoving party's favor. *Int'l Outdoor*, 974 F.3d at 697 (citation and internal quotation marks omitted). Although the movant bears the burden of establishing that there are no genuine disputes of material fact, she can meet that standard by showing that the non-moving party lacks evidence to support an essential element of her case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

In sum, "[t]he key issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Rocheleau v. Elder Living Constr., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)). And "[i]n reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005). That said, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Moreover, "a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (citation and internal quotation marks omitted).

2.      Freedom of Access (Count I)[3]

Randle makes the same arguments on appeal that she made below, and Defendants make the same arguments in response[4]—that (1) they did not infringe on Randle's First Amendment right of access because Randle had alternative means of access and (2) Defendants' enforcement of the disorderly conduct rule satisfies the applicable test for restricting freedom of access.

---

[3] The Amended Complaint brings both individual and official-capacity claims against each Defendant. Both types of claims fail if there is no deprivation of rights. *United Food & Com. Workers Loc. 1099 v. City of Sidney*, 364 F.3d 738, 746 (6th Cir. 2004) ("In order to state a cause of action under § 1983, appellants must allege (1) that they were deprived of a right secured by the Constitution or the laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law."). Our analysis therefore does not differentiate between the individual and official-capacity claims.

[4] Defendants also argue that legislative and qualified immunity foreclose Randle's First Amendment claims. We do not address immunity because the other issues are dispositive and the district court did not reach the immunity issue.

The public has a qualified, *United States v. Kincaide*, 119 F.4th 1074, 1078 (6th Cir. 2024), right to access certain government proceedings based on "the common understanding that a major purpose of th[e First] Amendment was to protect the free discussion of governmental affairs," *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 604 (1982) (quotation marks and citation omitted). The right applies to criminal proceedings, *id.* at 604, and "certain aspects of the executive and legislative branches," *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 695 (6th Cir. 2002). "To determine whether the right of access attaches, we . . . ask (1) whether the proceeding or material has historically been open to the press and the general public, and (2) whether public access plays a significant positive role in the functioning of the particular process in question." *Kincaide*, 119 F.4th at 1077–78 (quotation marks and citations omitted). Defendants do not dispute that Randle had a right to access the meeting.

It is not clear that Defendants infringed on Randle's freedom of access, given that Randle had numerous alternative means of access—watching the official footage on YouTube, video or audio recording on her cell phone or another device with a less-bright light, and/or taking notes.[5] Although Randle contends that those alternative means of access are inadequate substitutes for footage filmed on her camera because the alternatives would not allow her to zoom in on Council members or focus on different parts of the room, she never explains why those differences are legally significant. However, even assuming Defendants did limit Randle's right of access, that limitation was permissible.

---

[5] *See Whiteland Woods, L.P. v. Twp. of W. Whiteland*, 193 F.3d 177, 183 (3d Cir. 1999) (upholding ban on videotaping planning commission meeting as not infringing First Amendment right of access because a government entity need not "accommodate every potential method of recording its proceedings, particularly where the public is granted alternative means of compiling a comprehensive record" and "[s]pectators were free to take notes, use audio recording devices, or even employ stenographic recording"); *Rice v. Kempker*, 374 F.3d 675, 679 (8th Cir. 2004) ("[C]ourts have universally found that restrictions on videotaping and cameras do not implicate the First Amendment guarantee of public access." (collecting cases)).

The test for limiting freedom of access, set forth in *S.H.A.R.K. v. Metro Parks Serving Summit County*, has three steps: (1) "ask[ing] what rule the government is invoking that prohibits the plaintiffs from access to information, and whether that rule selectively delimits the audience"; (2) "inquir[ing] into the government's stated interest for invoking the rule"; and (3) "apply[ing] the applicable test to determine whether the government's stated interest is sufficiently related to the means of accomplishing that interest." 499 F.3d at 560–61 (cleaned up). "[I]f the rule does not selectively delimit the audience, we uphold the restriction if it is reasonably related to the government's interest; if the rule does selectively delimit the audience, a stricter level of scrutiny will apply." *Id.* at 561.

Defendants invoked the Council's rule against disorderly conduct, which is content-neutral. *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 433 (6th Cir. 2009) ("Any restriction on speech under this policy is justified without reference to the content of the speech, making it content-neutral on its face." (quotation marks and citation omitted)). And nothing in the record suggests that Defendants were selectively enforcing the rule against Randle. Although Randle claims Defendants targeted her, she cites no evidence to support that assertion, and neither the video footage nor anything else in the record other than Randle's conclusory allegations suggests that any other person was allowed to record using a similar light, or that instructing Randle to turn off the light was a pretext to prevent her from recording. *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) ("Just as a plaintiff may not rely on conclusory allegations to proceed past the pleading stage, so too a plaintiff may not rely on conclusory evidence to proceed past the summary-judgment stage." (citations omitted)); *Hartman v. Thompson*, 931 F.3d 471, 480 (6th Cir. 2019).

Defendants' stated interests were to preserve order and allow Councilwoman Worthing to participate in the meeting without getting a headache from the bright light. Those are facially

neutral, legitimate government interests. *See Lowery*, 586 F.3d at 433 ("Unstructured, chaotic school board meetings not only would be inefficient but also could deny other citizens the chance to make their voices heard.").

Finally, Defendants' actions were reasonably related to their stated interests. Again, the sole issue was the bright light on Randle's camera, which Defendants specifically asked her to turn off. Randle argues that Worthing could have moved to another seat where Randle's light would not bother her, or that Defendants "could have asked Randle to move to a different location in the room, cover the light, or other remedies that would not have required the camera to be turned off." Appellant's Br. at 18–19. But directing Randle to turn off the light—not the camera—or leave was a straightforward way of addressing the specific issue. Lewis also asked Randle to block the light. R. 25-4, PID 612 ("[I]f she wants to record, block the light so we can proceed. That's all we want to do."). And, as the district court aptly noted, "[a] person recording a council meeting has no First Amendment right to force public officials to change their seating arrangements." R. 31, PID 1123.

3.     Freedom of Expression (Count II)

That leaves Randle's freedom-of-expression claim, which also fails for two reasons. First, the Amended Complaint alleges only an infringement on Randle's ability to record, not her ability to speak at the meeting or disseminate information afterwards. "The case before us is [therefore] about access to information as opposed to the right to expression." *S.H.A.R.K.*, 499 F.3d at 559. Moreover, "[a] prohibition on recording speech is not a prohibition on speaking." *Hils v. Davis*, 52 F.4th 997, 1001 (6th Cir. 2022). And a lack of protected speech forecloses a freedom-of-expression claim. *Parks v. City of Columbus*, 395 F.3d 643, 647 (6th Cir. 2005).

Second, even if mere recording were protected speech, the restrictions Defendants placed on Randle would still be permissible. A city council meeting is a limited, designated public forum. *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 518–19 (6th Cir. 2019). "Within such a forum, the government may regulate the time, place[,] and manner of speech so long as the regulation is (1) content-neutral, (2) narrowly tailored to serve a significant governmental interest[,] and (3) leaves open ample alternative channels for communication of the information." *Lowery*, 586 F.3d at 432 (cleaned up). The rule prohibiting disorderly conduct is content-neutral, *id.* at 433, and there is no evidence of selective enforcement. Because Randle was permitted to record if she did not use a bright light, Defendants restricted her speech no more than necessary. *Tucker v. City of Fairfield*, 398 F.3d 457, 463 (6th Cir. 2005) ("[T]he requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation and does not burden substantially more speech than is necessary to further the government's legitimate interests." (cleaned up)). Even if some alternative approach theoretically might have been less restrictive, telling Randle to turn off the light on her camera or leave was not "substantially broader than necessary." *Ward v. Rock Against Racism*, 491 U.S. 781, 800 (1989). Defendants' interest in orderly meetings is important. *Lowery*, 586 F.3d at 433. And, as discussed above, Randle had access to ample alternative means of recording.

*       *       *

For the reasons set out above, we AFFIRM.